We'll hear argument now in United States v. Prince. May it please the Court, Counsel. Good morning. Your Honor, this case tests the constitutionality of Section 922G1, a statute that's been in place nationwide for over 50 years and that rests on centuries-old tradition of legislatures categorically disarming groups of people believed to pose a risk to society if armed. In every one of its important Second Amendment decisions in the past 15 years, the Supreme Court has taken pains to emphasize that it was not casting doubt on the constitutionality of certain long-standing federal regulations, including specifically prohibitions on the possession of firearms by felons. Yet the District Court in this case held Section 922G1 unconstitutional on its face. This judgment, which is contrary to this Court's intervening precedent in Gay, as well as the decisions of every circuit court to address the issue, should be reversed. To begin, the decision in this case is governed by this Court's decision in Gay, which upheld the constitutionality of 922G1. How are we to reconcile Gay and Atkinson? In Atkinson, the Court specifically talked about the Bruin change to the law that changed the manner of assessing the constitutionality of these statutes. In Gay, the Court applied Bruin and did so in a manner that was consistent with Bruin's edict. I think the fact that you are here ought to tell you that this Court doesn't think that it has fully resolved this issue. Otherwise, we would have summarily reversed. So instead of talking about either Gay or Atkinson, I think you should address the merits. 922G1 is constitutional facially and is applied to Mr. Prince under the Bruin analysis. Step 1 of the analysis requires the Court to consider whether the regulated conduct here, possession of firearms by felons, is covered by the plain text of the Second Amendment. Felons are not among the people protected by the Second Amendment. We know that because the people is a term of art employed by selected parts of the Constitution to refer to a class of persons who are part of the national community. Why aren't felons part of the national community? In some states, felons can't vote or hold office, for example, but in other states, they can. People who are voting are surely part of the national community. What's missing? Well, as a general rule, in the states where felons can vote, that is, where they've had their civil rights restored to them. In some states, they never lose their right to vote. That's true. I believe that's true in four states. In most of the states of the country, they do lose their civil rights, and when they get them back, they're no longer considered felons for purposes of 922G1. It is an anomaly. That's 921A20, which, as you know from the history in this circuit, is not pellucid. It's not the best-written statute. But the question I'm asking is straightforward. How can one say that people with a felony conviction but able to vote are not part of the national community? We've held that permanent resident aliens are part of the national community. That's true. And another way— Even though they can't vote. That's true. And another way of looking at the topic of who is covered, who is protected by the Second Amendment, is to look at the people who are disqualified, who are recognized as being disqualified from exercising their rights under the Second Amendment. And that's another way of looking at the same topic. Either way, you address the question of what did the Second Amendment mean, and what was the scope of the Second Amendment in the minds of ordinary people at the time of the founding? Every other circuit that has addressed the question of whether or not convicted felons fall within people in a post-Bruin-Rahimi era have found that they do. So you would be asking us to create a circuit split on that particular issue. That's true. But it is the government's position that that is the case. Of course, that does not resolve in any way. How do you get around the argument that the First Amendment and the Fourth Amendment refer to the people, and certainly convicted felons have the same rights as everybody else under those amendments? Well, number one, although the court in Bruin did focus on the First and the Fourth Amendment, and that's true with other portions, the Constitution contains other references to the people, which do not require the same sort of reading. In fact, they require actually an opposite reading. For example, the people who vote for the president, for the members of Congress are the people, and that's not being used in the same term. Isn't that of the people as opposed to the people? It's the people. So it's used in the Constitution in other areas differently, and it's not the case that the people need to be referred to in the same way in every area. It's just not the case anyway, regardless, but it's not necessary. So it is true. I mean, if we regard it as a rule that the people has to mean exactly the same thing as it does in the context of the First and Fourth Amendment, then we must be consistent. I take your point on that. But it's not necessary to do that. And if we do that, you would agree then that they would fall within the people, if that's how we're looking at it, looking at it compared to these other amendments, which are right next to them. Right, right. But of course, that would also mean that the people – well, yes, that's true, and that would expand the rights of people who are not citizens. So maybe move on if you – But we've already held that aliens, at least permanent resident aliens, are part of the people. That's true. And they too are protected by the Fourth Amendment. And the second we held – you might want to move on to some other argument. 922G1 falls well within this nation's history and tradition of firearms regulation, and it remains constitutional under the second step of the Boone analysis. Two types of law – the government has presented two types of law that are pertinent to this tradition. First, laws that categorically disarm groups considered untrustworthy adherence of the law. And two, laws providing severe punishments to felons up to and including death. Ms. Bonamici, there's a lot of discussion about how and the why, the burdens and justifications that exist for purposes of the similarity analysis we're doing. Is it your position that the regimes can cross paths, meaning you can have a how justification and a why burden on different analogs, and that would still result in a determination that there was a similar previous law? Yes, and I think Rahimi made that perfectly clear. I wouldn't describe it as crossing paths. I would describe it as considering two distinct legal regimes in total and as a whole or side by side. And so I think Rahimi was very clear that it was not necessary to find any specific – not only not any specific mirror image of a statute, but not even any specific or distinct set of laws, that it was perfectly acceptable to consider multiple distinct regimes at one time. And that plays here, and I understand why you're asking that. Here, with respect to purpose, it's clear that the loyalty oath laws that we present were intended to disarm people who weren't considered trustworthy with respect to following the law, abiding by the law, and therefore presented a danger to the community if armed. That's the exact same purpose that we have here in 922G1. What if they took the loyalty oath but remained dangerous? We would compare that to a person who chose not to become a felon. But in any event, in that case – well, actually, a better comparison would be a felon whose civil rights were later restored, who received a pardon or expungement of his crime. What about a 925C-type circumstance? Were they putatively a nonviolent felon, and the individual wants to get that right back, and they utilize that portion of the statutes? Yes, that would also apply, although, as we acknowledge, that has not been in use. So that would need to be activated, but that would certainly provide another basis or another means of removing the disarmament. And that – I mean, focusing on that, on the burden right now, that demonstrates that it's not – that 922G1 is not actually a permanent burden. There are means of removing yourself or removing that burden from individuals. And then the severe penalties imposed upon felons at the time of the founding demonstrates that even if that were not the case, permanent burdens on felons were something that people were familiar with and understood to be. What about crimes or defendants who might be – who are dangerous, but their crime did not fall within one of the crimes historically where capital punishment or severe punishment would have been imposed? How would we analyze that? I'm not sure I understand what we're talking about. So you're relying on the – really, the capital punishment in history and crimes where the death penalty was imposed for this permanent disarmament. What if there are certain crimes that just didn't fall within or historically can't find evidence but might be considered dangerous? How would we analyze those? Well, in terms of connecting the dots between that. Yes, as to whether or not 922G1 would be constitutional as to those prior felony convictions that don't fall within the severe punishment but where you have a dangerous defendant. I think the answer to that question is to be found in Rahimi. That level of specificity in the analysis, we would say, is not consistent with Rahimi's teaching. That would be looking for a historical twin, and so it's not necessary to do that or even appropriate. In reality, the statute that we have here applies to people who have committed serious crimes and demonstrated willingness to disregard the law and violate it, and Congress made the decision that those people presented a risk to society. It's a reasonable decision. That kind of – this is a reasonable decision. That decision is comparable to the decision that, looking back, in some cases was clearly odious and inappropriate, right? But the decision made to disarm a class of people who were believed to be unworthy of trust and dangerous to the community. So it is the same thing, even if individual crimes don't match up exactly. Is there ever an instance where the court would have to do an individualized assessment to determine whether or not an as-applied challenge survives? Or do you think all of this is categorical? The government's position is that it is and it should be categorical, that as-applied challenges should not be – are not appropriate in this setting. Ever? So there could be no as-applied challenges for a second mental restriction? I think when you're talking about a case or a restriction that is categorical, as this one is, and that as tied is fully supported by history and tradition as to the full category, it would be inappropriate to look beyond the categories. Isn't that a hard argument to make, though? You're telling us that it doesn't have to be historical twin to the crime, but you're saying categorically then it does allow for no as-applied challenges. I think that's exactly the – actually, I don't think that's hard. I think that's exactly the point, is that if it measures up, if it passes muster under the test presented by Bruin, then it is not – there's not a basis, really, for picking it apart and figuring out – and looking for exceptions. It either passes muster or it doesn't categorically. Now, if the court were to find that it did not pass muster categorically or that the full category was not – in her cert petition in range. And, of course, the Supreme Court vacated the Third Circuit's decision in range in light of Rahimi. Do you know what's happened on remand in the Third Circuit? As far as I can tell, it's still in a holding pattern. I did look at this last week, and I wasn't able to see any movement at all. It was vacated almost six months ago, and nothing has happened in the Third Circuit. Not that I see, and I didn't call to speak with anyone out there. So, right, that's correct. But does that answer your question, Judge Brennan? Well, if the government's position is that there can be no as-applied challenges to Second Amendment restrictions, that's a very bold statement. I think that's overstating my point. It was the Solicitor General's point. That's why she filed this cert petition in range. Well, for today, in this case. And I take it you're not trying to contradict the Solicitor General. I'm not. I'm not. But I don't feel that it's necessary to make that bold statement and accept that bold statement to find – Well, look, I would understand an argument that we don't have here somebody who was convicted of a tax offense 30 years ago. Correct. Right? Or in range, somebody who was convicted of a food stamp crime and never served a day in prison. That's absolutely correct. Somebody who was violent. And that was the analysis that the court followed in Gay, and it was an appropriate way to resolve this case as well. If we're trying to give guidance to the courts that are getting all sorts of challenges now going forward, we certainly gave some in Atkinson. Should we just rest on that going forward? Or what kind of guidance are you asking for for other cases that, like the examples Judge Easterbrook just gave? In this case, it would be appropriate for the court to find that 922G1 is constitutional on its face and constitutional as applied to the defendant here. And stop there? The only opening for further discussion, it seems to me, is if the court were to consider an opening for an as-applied analysis. And I don't think that that's supported by the history and tradition. That does support the constitutionality of 922G1. And I also think that it is completely unworkable as a practical matter. And for a hundred reasons. Some judges would push back and say, if the metric is dangerousness, district judges do the dangerousness call all the time. Bail, sentencing, supervised release. There's a position out there that the district courts have the ability to do that and do so case-by-case, person-by-person. Why wouldn't that apply here? In an as-applied context. In an as-applied context. One question is, what would the court be advised to base that on? Should it be based on the prior felony that the defendant has on his record? Should it be based on the defendant's entire criminal history? Should it be based on all of the facts that a judge would consider in sentencing the defendant? What about cases where the issue comes up in the context of it, like this one, with a pretrial dismissal? What facts would govern the court's decision in that context? When there hasn't been, you know, there's a plea of not guilty and there's not a finding of facts with respect to the crime, you know, before the court. Inherent in a lot of criminal litigation, the lack of discovery. Before you close, this case was the first of many cases. I think 60 or so backed up. Do you have any idea, Ms. Riggs-Bonamiche, on how many cases remain pending as a result of this case? Yes. I think it's 39. 39, okay. That involved 922 G1. Thank you. I thought we had deferred briefing in more than 60. Was that for other provisions of 922? That might include those, but I don't think that there are that many. Perhaps that has to do with the other districts. I'm only speaking for the Northern District of Illinois. For the Northern District. I'm talking, and Judge Brennan was talking about the Seventh Circuit. I'm sorry. We do have six other districts. That's very true, and I have not gathered the evidence with respect to the other districts. One more question. Is there anything in our recent opinion in Bevis that has any impact in this case? I'm not sure about that. Thank you, Your Honors. Thank you. We would ask that this Court reverse the Court's judgment and remand. Thank you. Thank you, Counsel. Mr. Korfman. Good morning, Your Honors, and may it please the Court. Jack Korfman from the Federal Defender on behalf of Mr. Glenn Prince this morning. Section 922G1 is an unprecedented in our nation's history, broad prohibition of a possession of a weapon permanently into the future for any individual. Mr. Korfman, before we get going too far, do I understand you as making only a facial challenge? That's correct, Your Honor. You're not arguing that it's invalid as applied to Mr. Prince? Not before this Court, no. Okay, thank you. And at that point, I then have to say, how can you reconcile a facial challenge with the repeated statement of the Supreme Court that statutes disarming convicted felons are presumptively constitutional? Surely that means they're constitutional on their face, or are we just supposed to say, stick out our tongue and say, yeah, yeah, we're not going to follow you. So I don't think we need to wag our tongue, but I think the Supreme Court was clear when it said presumptively that it was presuming without deciding, that's what the word presumptive means, what the constitutionality of an issue might be. The other way to understand that is it's saying it's constitutional on its face, and there may be some circumstances when it's not. Respectfully, Your Honor. Has any justice suggested that this statute is unconstitutional on its face? No, Your Honor. I don't even see that in any of Clarence Thomas' writings. But several justices have, I think, reaffirmed that. Has any court of appeals held that it's unconstitutional on its face? No, Your Honor. You're asking us to go against how many at this stage, seven, eight? I think it's only six courts that have firmly held that it's constitutional. Several others are waiting. To your question before, the range case was set for supplemental briefing. It was re-argued in October. I think we're pending a further decision from the Third Circuit about that. But to answer your question about the statements from the Supreme Court, I don't think that those are binding here, in part because we know that the statements the Supreme Court made in Heller are not totally accurate. What the Heller court said is that felon and possession laws, like some other laws, are longstanding and therefore presumptively constitutional. And we know after Bruin and Rahimi that they are not longstanding in the way that the court means it in those later decisions. Rahimi also was clear that dangerous people may be disarmed. That's the core holding of Rahimi, right? And using a felony conviction as at least prima facie evidence of dangerousness seems perfectly straightforward. So I think the core holding of Rahimi is not that dangerousness is a workable principle for any statute in general. It is the principle that the G-8 statute at issue operates on a dangerousness principle in the same way as two very specific historical analogs that the court looks to. It looks to the surety and the going arm laws. And the Rahimi court doesn't say that means that this is dangerousness. And the Sixth Circuit just held that those same statutes, those same historical analogs, support 922 G-1. They did, although, respectfully, Your Honor, I don't think... After what seemed quite a thorough catalog of historical evidence. So that's right. I think speaking of the Williams decision, that is what the Sixth Circuit held. Respectfully, I don't think that decision is correct for the reasons we've laid out in the briefing and primarily because it, I think, accomplishes some of the same missteps that the government does, which is that it looks to historical tradition and to those same laws that were issued in Rahimi that are not connected to the G-1 statute. Rahimi required from those surety laws a specific individualized finding of dangerousness after a hearing that existed in a court order and then upheld... No, Rahimi didn't require that. The statute required that. Rahimi held that the statute is constitutional. So that's correct, but by looking to a specific set of procedures and traditions in our nation's history. And those traditions... The statute in G-1 doesn't require that. It doesn't require any information at all. It requires a felony conviction. That is, after a full opportunity for a hearing and an opportunity to have your case resolved by a jury. Now, I can understand, as the Third Circuit said in range, if you've got a felony conviction that doesn't seem to bear on current dangerousness or dangerousness ever, you might have a different case. But as you've said, you're not making an as-applied challenge, and it would be very hard on behalf of somebody whose convictions mark him as an armed career criminal. So, first, the ACCA charge hasn't been proven. We were ready to go to trial on that issue. But I don't think, again, that that's the right inquiry here. This is a facial challenge under the Bruin standard, not under a means-end scrutiny standard. And so the question is not, is there a compelling governmental interest that would weigh in on infringement of a person's right in a particular case? The question is, under Bruin and Rahimi, is the law at issue constitutional under the historical test for the how and the why that it was imposed? And that's not the same analysis in the Bruin context as it might be in another circumstance. Mr. Corcoran, same question I posed to Ms. Briggs-Motovici with regard to the mixing of the regimes or the multiple regimes. Is that allowed under our how and why similarity analysis? So I think yes and no. Yes, in the sense that the Rahimi case does do a little bit of back and forth, but I think that's because the Rahimi case says these two surety and going-to-arm laws have the same why, they're trying to get at the same thing, which is a restriction of a firearm for dangerousness. And so the fact that they treat the burden, the how a little bit differently, lets us use both of them. I don't think the reverse would be true. I don't think it makes sense to say we can look to two laws that don't share that same underlying principle, that burden will write in completely different ways, and then just adopt some other burden that's not actually tethered to the how and the purpose that we're looking to examine, because there would be no way to connect the burdens if that were true. Play that out here for this case, then. And so in this case, I think what that results in is, especially for some of the capital punishment arguments, those are imposed for a different reason than the way G1 is imposed, and so even if it's true that there might be circumstances where somebody at the founding would have been permanently disarmed sort of by accident through something like execution or estate forfeiture, that's not the purpose of that disarmament, that's not why that's going on, and so the fact that that happens to occur in some other context isn't the reason that the law that's imposed in that case works, and that's why G1 operates differently, because it's not an individualized finding that says we're going in and disarming a person based on a specific finding. In Ecuador, in that way, it just says any person who has a prior conviction that qualifies, and as Judge Isabro pointed out, this might be many types of people. Most felonies are not, I think, violent or dangerous today in any sense of those words, and so it encompasses an enormous swath of people that wouldn't meet that definition, and G1 doesn't care about that. The statute does not require any kind of finding that that is true, and so for it to be constitutional, we need to meet some kind of historical tradition, and there is no historical tradition that allows that level of broad disarmament, and then even beyond that, even if it were true that that's how this worked, I don't think the burden matches. The history has no example of a person who was not executed being permanently disarmed in the future of their ability to repurchase arms. All the historical traditions that disarm an individual who was not executed make no provisions about what they might be able to do with their weapons once they serve their sentence or are released or, you know, pass through whatever the period... In the Shades Rebellion, it's a three-year period, and the arms are returned. In other cases, there's not even a period. They just forfeit whatever arms were possessed at the time, and then they can go out, and as far as we can tell, repurchase arms if they would like, and we know that this is unusual because there are historical laws from the founding where someone who was convicted of a felony is treated differently in other ways, especially in the voting and some of the other civic right contexts where there are laws that say you have these kinds of convictions, you can't exercise these kinds of rights, and we don't see any evidence of that in the founding for the prior felony conviction situation. Mr. Corfman, is there anything in our Beavis opinion that would impact the analysis in this case? I don't think so, Your Honor. The Beavis opinion is talking about a pretty different regulatory structure that has a lot of moving pieces, and I just don't think that, given, frankly, the simplicity and the breadth of the G1 case, I don't think that this court's opinion in Beavis has much influence one way or the other. It looked like your client was charged with having a semi-automatic weapon in this case. There's not a lot of evidence in the record, but it seemed like it was a semi-automatic weapon. If that's the case, would he fall outside of the protections of the Second Amendment under Beavis? I don't think so, Your Honor. It was a handgun. It was otherwise... I mean, his possession under G1 would not have been legal, but I don't think it would be otherwise restricted in ways that Beavis would prohibit, absent some other facts that I'm not aware of in the record that would prevent that, so... I guess I do want to talk a little bit about the government's, the breadth of the argument that I think the government is making in terms of the law-abiding citizen and the scope of the principle, because the government's argument is not, as Judge Easterbrook noted, really a dangerousness argument. The government's principle is much broader, is that any person who is not law-abiding can be disarmed. And that principle, I think, isn't workable. Some of the courts, the Range Court, the Duarte Court... Oh, it certainly is workable. It might not be valid. But you can tell whether somebody has a conviction for drunk driving or jaywalking or...  So, workable may have been the wrong term, but I think it's not tenable under Bruin and Rahimi, which clearly did not intend to...  Intend? You want us to look into the heads of the justices? Why don't we look at what they wrote? I think we know what they intend, because this is what they said in Bruin, which is that we are... No, why don't we look at what they wrote? Their decisions are what they wrote, not what's in their heads. Right? You don't want to make an argument based on intent. It's not something where we can take a soul and open them up and see. That's correct, Your Honour. And what Bruin says is that it rejects a means-end scrutiny test, which has resulted in a lesser standard of protection for the Second Amendment, specifically in part because it is granting too much deference to state legislatures to infringe the Second Amendment. And if the government is right... So, what do you say about the Supreme Court's opinion in Sampson against California? So, Sampson is a Fourth Amendment case that I think doesn't have a lot of application here. My understanding of the way Sampson... Sampson is a Fourth Amendment case, of course, but what the justices held was that after you've been convicted of a felony, your Fourth Amendment rights are seriously diminished, if not gone, for a specified period. Now, the specified period is less than the lifetime, but why isn't that equally true of the Second Amendment? So, I guess I want to say two things. One is the Sampson case is about a Fourth Amendment interest-balancing test, and so the reason it reaches the conclusion that Your Honour... I don't think it balances anything. Just look at the holding of Sampson. Talk about the holding. So, the holding of Sampson is that it is reasonable for the state to... suspicionlessly search an individual who was on supervised release, because there's a search condition in that case that allows an individual to be searched, and that reduces his expectation of privacy and allows the governmental interest in the search to overcome the individual's Fourth Amendment right in the alternative. It is, Your Honour, respectfully, an interest-balancing decision under the Fourth Amendment's reasonableness test. And importantly, it is not a historical analysis of what kinds of rights individuals had at the founding. It is not a historical analysis of whether or not individuals could maintain... I raise it because it's another amendment, and if the rule is that the Second Amendment is not some lower tier of rights, what's the upper tier of rights? Well, that's often thought of as the Fourth Amendment. But a felony conviction has big effects on people's rights under the Fourth Amendment. Why, in your view, does it have no effect on their rights under the Second Amendment? So, I want to be clear, Your Honour. I don't think that it has no effect. I think the question is whether or not... If 922G1 is invalid on its face, it has no effect. If it's an as-applied challenge, well, as I say, that can be more difficult. But to say that 922G1 is invalid on its face is to say that the felony conviction, as a constitutional matter, cannot have any effect on your ability to bear arms. I don't think that's true, Your Honour. I think what it says is G1, in the way that it is written, is unconstitutional, but a different statute that is written differently, that has targeted a different kind of conduct, could very well be constitutional. So, a statute that said, you are on supervised release, that may or may not be constitutional. This court would have to do the historical analysis... I don't get this. Something is invalid on its face only if there is no conceivable valid application. So, the question is, can somebody who has committed a murder with a firearm and then commits another murder with a firearm be punished for having a firearm after the first murder? If the answer is yes, the statute is valid on its face. If the answer is no, and you're arguing that the answer is no, I don't see any room for your hypothetical other statute. So, I don't think that that's quite the right as-applied versus facial distinction, because we know from Rahimi that that's not the level of factual engagement that we are doing... Rahimi repeated the exact test that I have just given. The statute is invalid on its face only if it has no valid application under any circumstances. So, that's right, but Rahimi does not engage in a question of whether or not Mr. Rahimi is dangerous... Of course not, because it held the statute valid on its face. There was no as-applied challenge in Rahimi. That's right, Your Honor, but it only does that because it looks to the statute and says there is a provision in the statute that makes it constitutional because it requires this individualized finding that refers back to the tradition that we have now pointed to, and there is no such requirement in G1, and so G1 is too overbroad based on the history, based on the history that we know exists to allow it to be constitutional. Whether or not a statute that says some other version would be constitutional isn't before this court. It wasn't before the court in Rahimi, and the court would have to work that out under the historical principles of Brewer and Rahimi in that case. If 922G were applied to the hypothetical that Judge Easterbrook just posed, would it be constitutional? The two murders? Yes. I'm sorry, 922G, what provision of G? G1. G1, again, it's facially unconstitutional, would not be constitutional there. That doesn't mean that there would be no other law that might be constitutional that could apply to that conduct. We talked about this a little bit in the briefing. There might be many other laws that would apply to what had happened in a circumstance like that that would be constitutional, but G1 doesn't have any of the provisions in it that would allow that. And again, whether or not that would be true under a means and scrutiny test where we're allowed to look very detailedly at the interest balancing, the Brewer and Rahimi test is not that test. The Brewer and Rahimi test is, are the how and why consistent in a law to our nation's historical tradition? And that test looks, I think the product of that is that the as-applied and facial challenges look different than they would under a sort of means and scrutiny test like the one at issue. And we know that's true because Rahimi doesn't say, Mr. Rahimi is dangerous and therefore doesn't have a second amendment right. What they say is this statute is constitutional because of the provisions in the statute. And that's not normally what we would do as an as-applied challenge. In the case that Judge Easterbrook noted, if somebody was on supervised release like in Sampson, the court says he's on supervised release and he doesn't have a fourth amendment right and it can be infringed. That's not what the court did in Rahimi. The court did something very different. And so I think this court should follow that guidance, hold 922G1 unconstitutional and affirm Judge Gettleman. I want to track the as-applied component because there is a district court ruling with regard to an as-applied challenge. There's mentioning in some of the briefing from the government of an as-applied, the decreed language and the reply brief for the government says reject the as-applied challenge. You've told us today you're not making an as-applied challenge. Is it that there was an argument offered below and it's not being raised on appeal because it's not part of your briefing or what's... So I think that's right, Your Honor. The briefing in the district court was, I think, touched on both issues. But on the appeal, we're only raising the facial challenge. Facial challenge, okay. Thank you. And if there are no further questions, we would ask the court to report. Thank you. Thank you very much. The case is taken under advisement.